164 Cal.App.4th 832 (2008)
In re A.B., a Person Coming Under the Juvenile Court Law. SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent,
v.
LEONARD D., Defendant and Appellant.
No. D052401.
Court of Appeals of California, Fourth District, Division One.
July 8, 2008.
*835 Lelah S. Forrey-Baker, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.
Carl Fabian, under appointment by the Court of Appeal, for Minor.

OPINION
McCONNELL, P. J.
The sole issue in this case is whether reversal of a judgment terminating Leonard D.'s parental rights over his son, A.B., is warranted because the juvenile court violated state law interpreting the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) by not inquiring as to the Indian heritage of A.B.'s mother, Angelique B. We grant the motion *836 of the San Diego County Health and Human Services Agency (the Agency) to augment the record to include a document Angelique filed in a dependency case in Monterey County Superior Court in which she denied having any Indian heritage, and based thereon, we affirm the judgment for lack of prejudicial error.

FACTUAL AND PROCEDURAL BACKGROUND
Angelique has a lengthy history of mental illness and substance abuse.[1] Before she and Leonard moved to California they lived in the State of Washington, where child protective services received approximately 600 referrals on her and she lost custody of two daughters. Leonard also has a child protective services history in Washington concerning his older children. Leonard admitted there was a restraining order in effect in Washington between him and Angelique, and they fled that state to avoid it.
A.B. was born here in the fall of 2006 when Angelique was on a 72-hour hospital hold. She and Leonard were homeless and she was found "wandering off a freeway." She reported that Leonard hit her in the stomach and left her on the freeway. She was not taking medication for her bipolar disorder, seemed out of touch with reality, exhibited childlike behavior, such as thumbsucking, and tested positive for cocaine. A.B. tested presumptively positive for cocaine. The Agency placed the baby in foster care and filed a petition on his behalf. (Welf. & Inst. Code, § 300, subd. (b).)[2]
At the detention hearing, Leonard submitted the California Judicial Council's form entitled "Parental Notification of Indian Status" (some capitalization omitted), which stated that to his knowledge he had no Indian heritage.[3] At the jurisdiction hearing Leonard confirmed he had no Indian heritage. The court asked Angelique's counsel if she had any Indian heritage, and he stated, "the normal form was not over in the box for me. Would we just submit it on December 1st? I mean on November 15th?" The court responded, "Certainly." Angelique's counsel then said, "Thanks. I will get one for the file." The court then asked if there was any objection to a finding that the ICWA is inapplicable. No party objected and the court so found. Presumably, no one followed up on Angelique's ICWA form.
*837 At a December 1 hearing, the court ordered the parents to comply with case plans. The court later ordered Leonard to participate in the Substance Abuse Recovery Management System (SARMS) program.
In January and February the Agency was unaware of the parents' whereabouts. The parents did not appear at a special hearing on February 13, during which the court found Leonard to be A.B.'s biological father. The court terminated Leonard from SARMS because of his failure to participate, but advised that he could later request a special hearing to address services.
By late February the parents were again in touch with the Agency. The following month the social worker went over Angelique's case plan with her and advised Leonard he should ask his attorney to request services for him. Leonard stated adamantly that "`if the Agency could not guarantee 100% that the child would be returned to him, he would refuse to do services.'" He signed his case plan but wrote on it, "do not agreed [sic]."
A special hearing was set in April to address Leonard's services, but he did not appear and the matter was continued. He also did not appear on the continued date.
At the six-month point, the Agency asked the court to terminate reunification services and schedule a permanency planning hearing under section 366.26. The parents had not progressed in their case plans, and Angelique had disclosed her recent use of cocaine and alcohol and two hospitalizations. The social worker explained the parents both "have severe mental health issues that preclude them from safely parenting children," and they "experience a chronic chaotic lifestyle consisting of substance abuse [and] homelessness."
On July 26, 2007, the court terminated Angelique's reunification services and noted that Leonard had not received services. The court scheduled a hearing under section 366.26.
In its assessment report the Agency recommended termination of parental rights and adoption as the preferred permanent plan. The report noted the ICWA was inapplicable per the court's earlier order. The social worker assessed A.B. as adoptable because he is adorable, young, pleasant, in good health, and progressing developmentally. Additionally, his foster parents love him and want to adopt him, and there are 10 other families in the area that would like to raise a child like A.B.
A contested section 366.26 hearing was held on January 25, 2008. After receiving documentary evidence and testimony, the court found by clear and convincing evidence that A.B. is adoptable and would not benefit from *838 further contact with his parents. The court terminated parental rights and found adoption is in his best interest.

DISCUSSION

I
(1) "The ICWA, enacted by Congress in 1978, is intended to `protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' [Citation.] `The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource.'" (In re Karla C. (2003) 113 Cal.App.4th 166, 173-174 [6 Cal.Rptr.3d 205].) The ICWA defines an Indian child as "an unmarried person under the age of 18 who is: 1) a member of an Indian tribe; or 2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe." (113 Cal.App.4th at p. 174.)
"The ICWA provides that `where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' " (In re Daniel M. (2003) 110 Cal.App.4th 703, 707 [1 Cal.Rptr.3d 897].) The court may not hold any proceeding on a foster care placement or termination of parental rights until at least 10 days after the tribe, or the Bureau of Indian Affairs (BIA) where the tribe is unknown, receives notice. (Ibid.)
Our Legislature has adopted statutes and rules of court to implement the ICWA. (See rule 5.480.) Section 224.3, subdivision (a) provides: "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a [dependent] child ... is or may be an Indian child in all dependency proceedings...." (See also rule 5.481(a).)
(2) In In re H.B. (2008) 161 Cal.App.4th 115, 120 [74 Cal.Rptr.3d 27], the court explained that neither the ICWA nor controlling federal regulations "expressly impose any duty to inquire as to American Indian ancestry." (161 Cal.App.4th at p. 120, italics added.) However, the "ICWA provides that states may provide `a higher standard of protection to the rights of the parent ... of an Indian child than the rights provided under [ICWA]' [citation], and long-standing federal guidelines provide `the state court shall make inquiries to determine if the child involved is a member of an Indian *839 tribe of if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe.'" (Id. at pp. 120-121, fn. omitted; 25 U.S.C. § 1921.)
If the court fails to ask a parent about his or her Indian heritage, a limited reversal of an order or judgment and remand for proper inquiry and any required notice may be necessary. (In re J.N., supra, 138 Cal.App.4th at pp. 460-462.) Reversal is not warranted, however, when the court's noncompliance with the inquiry requirement constitutes harmless error. (In re H.B., supra, 161 Cal.App.4th at p. 121; In re S.B. (2005) 130 Cal.App.4th 1148, 1162 [30 Cal.Rptr.3d 726]; In re Karla C., supra, 113 Cal.App.4th at p. 178.)

II

A
The Agency concedes the duty of inquiry was breached here. Further, it raises no standing or waiver argument.[4] Rather, the Agency moves to augment the record on appeal with a Parental Notification of Indian Status form that Angelique signed and filed on March 21, 2008, in the juvenile dependency branch of the Monterey County Superior Court, in a matter involving A.B.'s sibling or half sibling. Angelique checked the box on the form that states, "I have no Indian ancestry as far as I know."
The Agency filed a certified copy of the document at the juvenile court on May 13, 2008, in conjunction with a permanency planning hearing scheduled for July 23, and asked that the court confirm its original finding that the ICWA is inapplicable. The Agency contends that because Angelique has admitted she has no Indian heritage, reversal is unwarranted because the breach of the duty of inquiry did not prejudice Leonard.
(3) Rule 8.155(a)(1)(A) allows this court to order the record augmented with "[a]ny document filed or lodged in the case in superior court." Rule 8.340(c) provides, "At any time, on motion of a party or on its own motion, the reviewing court may order the record augmented or corrected as provided in rule 8.155." Moreover, under Evidence Code section 452, subdivision (d) we may take judicial notice of a record of any court of this state.
Leonard objects to the augmentation motion on the ground of untimeliness. Under rule 8.416(d)(2), a respondent must serve and file a motion to augment *840 the record within 15 days after the appellant's opening brief is filed, but under rule 8.416(f) "the reviewing court may order extensions of time, but must require an exceptional showing of good cause." Leonard filed his opening brief on April 4, 2008, and the Agency did not move to augment the record until May 29, 2008. The Agency requests relief from the 15-day limitation, and we find it has made a showing of good cause. The Agency explains that "various factors contribut[ed] to the late filing [including] time needed to have Monterey County mail [the form]; time for the Agency ... to prepare its additional information report; time for the report and attachment to be filed in the juvenile court ...; and time for obtaining the certified copy for this motion." Since the Agency filed its motion to augment on the same date it filed its respondent's brief, Leonard had plenty of time to reply and suffered no prejudice.

B
Leonard also contends our consideration of postjudgment evidence would violate the following language in In re Zeth S. (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541] (Zeth S.): "It has long been the general rule and understanding that `an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.'"
Zeth S., however, is distinguishable. In that case, the mother appealed the termination of her parental rights on the ground the court erred by finding the beneficial parent-child relationship exception to adoption was inapplicable. In an unsworn letter brief, the child's appellate counsel represented that she had investigated current circumstances and learned the mother visited regularly and assumed a parental role, and the grandfather felt pressured to adopt and would rather be a legal guardian. (Zeth S., supra, 31 Cal.4th at p. 403.) The Supreme Court disapproved of the Court of Appeal's consideration of postjudgment circumstances "as a means of reexamining the mother-child relationship," because "that was a settled matter which, by statutory directive, could not be reopened for reconsideration by mother, not even at the termination hearing itself." (Id. at pp. 411-412.)
The Zeth S. court held that "consideration of postjudgment evidence of changed circumstances in an appeal of an order terminating parental rights, and the liberal use of such evidence to reverse juvenile court judgments and remand cases for new hearings, would violate both the generally applicable rules of appellate procedure, and the express provisions of section 366.26 which strictly circumscribe the timing and scope of review of termination orders, for the very purpose of expediting the proceedings and promoting the finality of the juvenile court's orders and judgment." (Zeth S., supra, 31 Cal.4th at p. 413, fn. omitted.)
*841 (4) In In re Josiah Z. (2005) 36 Cal.4th 664 [31 Cal.Rptr.3d 472, 115 P.3d 1133] (Josiah Z.), the court clarified that in Zeth S., it held "an appellate court should not consider postjudgment evidence going to the merits of an appeal and introduced for the purposes of attacking the trial court's judgment." (Josiah Z., at p. 676, italics added.) In Josiah Z., the children's appellate counsel moved to dismiss their appeal on the ground she had investigated and found their current nonrelative placement satisfactory, and dismissal would be in the children's best interests. The court rejected the notion that Zeth S. precluded counsel's best interests assessment. (Josiah Z., at p. 676.)
The court explained in Josiah Z. that the California Rules of Court authorize a motion to dismiss and appellate courts routinely consider postjudgment evidence in support of such motions; "the limited issue involved in a motion to dismiss, whether a child should be permitted to abandon a challenge to the trial court ruling, is distinct from the broader issues resolved by the trial court, and consideration of circumscribed evidence in this context does not give rise to the vice we condemned in Zeth S.an appellate court's use of new evidence outside the record to second-guess the trial court's resolution of issues properly committed to it by the statutory scheme"; and "the beneficial consequence of motions to dismiss, where granted, will be to `expedit[e] the proceedings and promot[e] the finality of the juvenile court's orders and judgment' [citation]precisely the policy advanced by our ruling in Zeth S." (Josiah Z., supra, 36 Cal.4th at p. 676; see also In re Salvador M. (2005) 133 Cal.App.4th 1415, 1422 [35 Cal.Rptr.3d 577] [proper to augment appellate record to include agency's addendum report disclosing adoptive home study had been approved, which rendered issue on appeal moot].)
This case is more akin to Josiah Z. than Zeth S. In contrast to Zeth S., the postjudgment evidence is not presented in an unsworn statement of counsel. Rather, the Agency submitted to the juvenile court a certified copy of a court record from another county, which is subject to judicial notice. Leonard asserts the Parental Notification of Indian Status form "appears to be a contrived document," but he offers no support for that notion. Further, the Agency did not seek to augment the record with evidence pertaining to the substantive merits of the juvenile court's termination of parental rights, and the evidence cannot be used to reverse the judgment on substantive grounds. The ICWA inquiry issue is distinct from the substantive merits of the court's ruling, which Leonard does not even challenge. Also, admission of the evidence to affirm the judgment would promote the finality of the judgment and prevent further delay.
(5) Leonard submits that Angelique's ICWA-020 form is irrelevant because "a finding that the ICWA is inapplicable as to one child is not determinative of the question whether the ICWA applies in the case of a *842 sibling or half-sibling of that child." In support, Leonard relies on In re Desiree F. (2000) 83 Cal.App.4th 460 [99 Cal.Rptr.2d 688], but that case does not concern siblings or half siblings or the circumstances of the instant case. Leonard cites broad language that the juvenile court has an "affirmative duty to inquire regarding the particular child before the court." (Id. at p. 470.) We agree with that assessment, but the issue here is whether the failure to discharge the duty of inquiry is harmless error given Angelique's denial of Indian heritage in another dependency matter. "The holding of a decision is limited by the facts of the case being decided ...," despite broad language that appears helpful. (McGee v. Superior Court (1985) 176 Cal.App.3d 221, 226 [221 Cal.Rptr. 421].)
Leonard also cites In re Miracle M. (2008) 160 Cal.App.4th 834 [73 Cal.Rptr.3d 24] (Miracle M.), in support of his argument the harmless error doctrine is inapplicable here. In Miracle M., the duty of inquiry was fulfilled, and there were indications that both parents of the two dependent children, Miracle and Faith, had American Indian heritage. Because the tribes were unknown, the court ordered the social services agency to notify the BIA. (Id. at pp. 838-839, 847.) The social worker later learned the father may have Cherokee Indian ancestry. She also learned from the maternal grandmother that the mother's family had no American Indian ancestry, but descended from Mexican Indians. The social worker concluded the ICWA was inapplicable to the maternal side of the family. The social worker sent notice of the proceedings to the three Cherokee tribes, the BIA and the Secretary of the Interior. The notice, however, mentioned only Miracle, and the agency did not send either parent a copy of the notice. (160 Cal.App.4th at p. 839.) The tribes responded that Miracle was not an Indian child, and the juvenile court found the ICWA inapplicable. (160 Cal.App.4th at pp. 841-842.)
On appeal, the mother contended reversal of the judgment terminating her parental rights was required because the ICWA notice did not pertain to Faith, and the parents got no copy of the notice. The agency there, however, did not oppose a limited reversal and remand for notice as to Faith, and the case does not even discuss whether the failure to include Faith in the notice could be considered harmless error since the children were full siblings and there was no indication that Miracle had any Indian heritage. (Miracle M., supra, 160 Cal.App.4th at p. 846.) Again, cases are not authority for points not considered. (In re Marriage of Cornejo (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].) Notably, the Miracle M. court also held that as to Miracle, any defect in notice to the parents was harmless error because the mother "does not tell us how reversing the court's orders as to Miracle ... would produce any additional information that this child is an Indian child." (Miracle M., supra, at p. 847.)
*843 Leonard's reliance on In re J.N., supra, 138 Cal.App.4th 450, for the proposition that he is not required to show prejudice is also misplaced. In In re J.N., the court rejected the argument that the lack of inquiry of the mother was harmless error because there was nothing in the record that indicated she had Indian ancestry. The court explained "[w]e refuse to speculate about what mother's response to any inquiry would be ... and instead remand the matter to the trial court with directions...." (Id. at p. 461.)
Here, no speculation is involved because Angelique's Parental Notification of Indian Status form shows she disclaims any Indian heritage. Although the form was for another child, considered with Leonard's form in which he denied Indian heritage, it shows that A.B. necessarily has no such heritage. When a parent indicates he or she may have Indian heritage, "`it is preferable to err on the side of giving notice and examining thoroughly whether the juvenile is an Indian child.'" (Dwayne P. v. Superior Court, supra, 103 Cal.App.4th at p. 257.) When both biological parents deny any Indian heritage, however, there is no tribe to notify of the proceedings. "While the social worker and the trial court have a duty to inquire into the child's Indian ancestry, a parent has superior access to this information." (In re S.B., supra, 130 Cal.App.4th 1148, 1160.)
(6) Code of Civil Procedure section 909 allows appellate courts to "accept evidence in dependency cases `to expedite just and final resolution for the benefit of the children involved.'" (In re Carrie M. (2001) 90 Cal.App.4th 530, 535 [108 Cal.Rptr.2d 856].) That right, however, should be exercised sparingly. (Zeth S., supra, 31 Cal.4th at p. 405.) "`Absent exceptional circumstances, no such findings [based on the receipt of evidence outside the record on appeal pursuant to section 909] should be made. [Citation.]'" (Id. at p. 408, fn. 5.)
(7) We find exceptional circumstances here, and accordingly augment the record to include Angelique's Parental Notification of Indian Status form from the Monterey County dependency proceeding. Based thereon, we conclude the inquiry error constitutes harmless error. Since both parents have in judicial proceedings denied having any Indian heritage, resolution of this matter now does not thwart the laudatory purposes of the ICWA. Indeed, a limited reversal and remand for compliance with the ICWA inquiry requirement as to Angelique would serve no purpose other than delay. We do not countenance the lack of inquiry, of course, but A.B. has been in the dependency system since birth and he is entitled to permanence and stability as soon as possible.

*844 DISPOSITION
The judgment is affirmed.
McIntyre, J., and Aaron, J., concurred.
NOTES
[1] Angelique is not involved in this appeal.
[2] All statutory references are to the Welfare and Institutions Code except where otherwise specified.
[3] At the relevant time the form was designated JV-130, but it is now "form ICWA-020." (In re J.N. (2006) 138 Cal.App.4th 450, 461 [41 Cal.Rptr.3d 494]; Cal. Rules of Court, rule 5.481(a)(2).) All rule references are to the California Rules of Court.
[4] A parent's failure to object at the juvenile court to inadequate ICWA notice does not preclude appellate review. (Dwayne P. v. Superior Court (2002) 103 Cal.App.4th 247, 261 [126 Cal.Rptr.2d 639].) Further, any parent whose parental rights were terminated may challenge the lack of ICWA compliance. (25 U.S.C. § 1914; rule 5.486(a).)