Filed 10/27/15  In re Jordan O. CA3

**NOT TO BE PUBLISHED**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re JORDAN O. et al., Persons Coming Under the Juvenile Court Law. | C078921 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. Nos. JD233892, JD233893) |
| Plaintiff and Respondent, | |
| v. | |
| CRYSTAL L., | |
| Defendant and Appellant. | |

Crystal L., mother of the minors, Jordan O. and Thomas O., appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1] She argues the court and the Sacramento County Department of Health and Human

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

Services (the Department) failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) as to the minors' father.

The Department concedes the ICWA failure, but argues the error was harmless.

We accept the Department's concession as to the ICWA violation, but do not find the error harmless and will therefore reverse and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2013, the Department filed juvenile dependency petitions on behalf of Jordan, then one year old, and Thomas, then two years old, alleging the minors were at risk of serious physical injury within the meaning of section 300, subdivision (b) due to mother's and father's continuing substance abuse problems and failure and refusal to rehabilitate.

According to the October 15, 2013 detention report (filed October 9, 2013), mother and Jordan tested positive for methamphetamine at Jordan's birth in mid-June of 2012. The family was provided informal supervision services, but the case was closed due to the parents' noncompliance with those services.

In July 2013, mother dropped the minors off at the home of the paternal grandmother and did not return. Mother refused all services and refused to talk to the social worker.

In August 2013, mother gave birth to the minors' sibling, Laura L. Both mother and Laura tested positive for methamphetamine. Mother refused services, and Laura was placed with her father, R.M. (who is not the father of the minors).

The social worker attempted to make contact with the minors' father on August 23, 2013, August 29, 2013, August 30, 2013, September 3, 2013, September 6, 2013, September 18, 2013, September 19, 2013, and September 20, 2013, to no avail. On September 23, 2013, the social worker made an unannounced visit to the home of the

2

paternal grandmother. When the paternal grandmother was informed the minors could not stay with her due to her own extensive history with Child Protective Services (CPS), she left to find father, leaving the social worker waiting at the home.

Father eventually returned to the paternal grandmother's home. He became irate and hostile and denied allegations of physical abuse, drug addiction, and abandonment, stating he would never hurt his children. Father said he was homeless and did not have a telephone or any identification, and he did not know the Department was attempting to locate him. He felt the investigation was unnecessary, but agreed to drug test and to remain at the paternal grandmother's home until the social worker returned with bus passes and paperwork to facilitate drug testing. However, when the social worker returned that day, no one answered the door. She left a business card asking that father contact her immediately.

Meanwhile, the social worker received a call from mother, who asked if she could prevent the minors' removal from father's care by retrieving the children herself. When the social worker questioned mother about the case, mother became upset and argumentative, stating her CPS history was "no ones [*sic*] business." She also told the social worker that if the minors were removed, "she would like to reunify at some point and would consider services," but declined them at the time.

On September 27, 2013, the social worker made another visit to the paternal grandmother's apartment in an attempt to contact father. The paternal grandfather answered the door and informed the social worker that father had not been around for several days. Both paternal grandparents stated they suspected father was "using meth and [was] not in the right state of mind." The paternal grandfather had been staying at the apartment because the paternal grandmother was concerned father would "come back and 'do something.' " The social worker left the paternal grandparents with diapers and

3

formula, gave them her business card, and asked them to have father contact her as soon as possible.

On September 30, 2013, the social worker made another unannounced visit to the paternal grandmother's apartment. She found father outside working on a truck, and gave him the paperwork and bus pass needed for him to complete a drug test. Father admitted to recent methamphetamine use and agreed to comply.

According to the October 15, 2013 detention report, mother had not seen the minors since dropping them off at the paternal grandmother's home in July 2013. The report also noted a Native American heritage inquiry had not been made of either mother or father, as neither had returned any of the social worker's telephone calls.

On October 15, 2013, the minors were detained and placed in foster care.

On October 16, 2013, mother filed a Parental Notification of Indian Status (ICWA-020) form declaring no known Native American ancestry.

At the October 17, 2013 detention hearing, mother again denied any Native American heritage. The court ordered continuing detention of the minors. Following the hearing, the court ordered the Department to make a diligent search for father and to inquire regarding possible Native American heritage.

On October 22, 2013, the clerk of the court mailed to father notices of hearing (§ 291) regarding each of the minor's juvenile proceedings.

On November 5, 2013, the social worker attempted to contact father by telephone using two different numbers provided by mother. Unable to make contact with father, the social worker left a message requesting that father contact her.

According to the December 4, 2013 jurisdiction/disposition report, father had not contacted the Department as requested and had not provided any information regarding

4

possible Native American ancestry. The report noted the "Indian Child Welfare Act may apply."

On December 4, 2013, the court set the matter for a contested jurisdiction/ disposition hearing on January 21, 2014.

On December 4, 2013 and again on December 5, 2013, the Department filed a notice of due diligence of mailing (§ 291) identifying eight potentially valid mailing addresses for father. On December 11, 2013, notices of hearing in each minor's proceeding were sent to father at each of the eight addresses. All of the notices were returned as undeliverable.

Father finally appeared for the first time at the January 15, 2014 pretrial/jurisdiction/disposition hearing and was appointed counsel. The court found father to be the presumed father and set the matter for a contested jurisdiction/disposition hearing. No Native American heritage inquiry was made.

The Department filed an addendum report on February 14, 2014, regarding potential placement of the minors with the maternal great aunt. The issue of father's possible Native American heritage was not mentioned in the addendum report, nor was it discussed at the continued pretrial/jurisdiction/disposition hearing on February 19, 2014.

Although neither parent was present at the contested jurisdiction/disposition hearing on February 25, 2014, their respective counsel argued on their behalves and objected to out-of-home placement. The court sustained the allegations in the October 9, 2013 petitions, adjudged the minors dependents of the court and placed them with their maternal great aunt, and ordered that both parents participate in services. The court found the minors "may be Indian children," but made no further inquiry or finding in that regard.

5

The Department filed a permanency review report on July 28, 2014. The report included a notation that the "Indian Child Welfare Act does not apply," but provided no additional information in that regard. According to the report, "mother and father's current circumstances are unknown as they have failed to make contact with the Department during the last six months," and "have failed to participate in reunification services during the last six months." The report also noted that mother had not visited with the children since June 19, 2014, and father had not visited the children since February 10, 2014. The Department recommended that, among other things, reunification services be terminated.

Both parents were present at the August 6, 2014 permanency hearing. The matter was set for a contested permanency hearing on August 26, 2014, with a pretrial hearing set for August 20, 2014. No inquiry was made of father's possible Native American heritage at that time.

After a number of continuances, the contested permanency hearing was held on September 18, 2014. Neither parent was present, despite mother's assurance that she was on her way, and the trial commenced in their absence. At the conclusion of trial, the court terminated reunification services, continued the minors' out-of-home placement, and set the matter for a selection and implementation hearing (§ 366.26) in January 2015. The court made no findings or orders regarding the ICWA. Prior to the status review hearing set for October 29, 2014, the Department was unable to personally serve father with notice of the section 366.26 hearing. In particular, attempts to serve father at mother's last known address were unsuccessful, as were attempts to reach father by telephone at the numerous telephone numbers previously provided by mother. Mother was unable to provide any additional information regarding father's whereabouts.

Father was present for the October 29, 2014 status review hearing. The court ordered him to appear for the November 19, 2014 and January 7, 2015 hearings. Again, no inquiry was made of father's possible Native American heritage.

On November 19, 2014, father's counsel was present and filed a notification of mailing address indicating father could be served at the paternal grandmother's address. Father did not, however, appear for the hearing that day.

A selection and implementation hearing report prepared by the Department on December 12, 2014, indicated the ICWA "does not apply," with no explanation regarding that conclusion. The report also noted that father had not attended a visit with the minors since February 10, 2014; father left a voicemail message with the Department on October 29, 2014, requesting visits with the minors; the Department returned father's telephone call on October 31, 2014, and left a voicemail message when father did not answer; and the Department had not received any additional telephone calls from father as of the date of the report. The report recommended termination of parental rights as to both minors.

Both mother and father appeared at the January 7, 2015 combined motion to modify and selection and implementation hearing. Father indicated he did not have a current phone number, and stated the best way to contact him was through the mother. Again, no inquiry was made of father's possible Native American heritage. The court set the matter for a pretrial hearing, followed by a contested selection and implementation hearing.

Father failed to appear for the January 28, 2015 pretrial hearing, as well as the February 5, 2015 contested selection and implementation hearing. Mother appeared late and testified on her own behalf. After considering the written reports and testimony from mother and other witnesses, the court adopted the findings and orders in the selection and implementation report, terminated parental rights as to both minors, found the minors

7

adoptable, and selected a permanent plan of adoption. The court made no findings or orders regarding the ICWA, and the court's minute order makes no mention of the ICWA.

The "Orders Under Welfare and Institutions Code Sections 366.24, 366.26, 727.3, 727.31" for each minor indicate that "[n]otice has been given as required by law," but include no other findings or orders relating to the ICWA.

Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends the Department and the juvenile court failed to comply with the inquiry and notice provisions of the ICWA by failing to inquire as to father's Native American ancestry. She claims the error was prejudicial and requires reversal and limited remand. We agree.

The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.)

The juvenile court and the Department have "an affirmative and continuing duty to inquire" at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child. (§ 224.3, subd. (a); Cal. Rules of Court, rule 5.481(a).) The Department must ask the parent "whether the child is or may be an Indian child and must complete the *Indian Child Inquiry Attachment* (form ICWA-010(A)) and attach it to the petition . . . ." (Cal. Rules of Court, rule 5.481(a)(1).)

At the first appearance by a parent at the initiation of any guardianship or proceeding to terminate parental rights, the juvenile court must order the parent "to complete *Parental Notification of Indian Status* (form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(2).)

8

If the parent does not appear at the first hearing, the juvenile court must order the Department "to use reasonable diligence to find and inform the parent . . . that the court has ordered the parent . . . to complete *Parental Notification of Indian Status* (form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(3).)

Here, father was absent from the initial court hearing and most of the court proceedings thereafter involving the minors. He did, however, attend four hearings, making his first appearance at the January 15, 2014 pretrial/jurisdiction/disposition hearing. There is no evidence in the record that, when father was present in court, he was asked about possible Native American heritage or ordered to complete the ICWA-020 form.

Prior to father's first court appearance, the juvenile court did, on October 17, 2013, order the Department to make a diligent search for father and inquire as to his possible Native American heritage. There is no question the Department diligently searched for father and indeed made contact with him on at least two occasions during unannounced visits to the paternal grandmother's home. However, there is no evidence in the record that the Department ever inquired of father's possible Native American heritage.

Moreover, the Department was in contact with the paternal grandparents, and particularly with the paternal grandmother with whom father was known to contact and at whose home father was known to stay. The Department's duty of ICWA inquiry extends to the minors' extended family, if known. (§ 224.3, subd. (c); Cal. Rules of Court, rule 5.481(a)(4).) Despite that the social worker made contact with the paternal grandparents at the paternal grandmother's home on more than one occasion, and left messages with both father and the paternal grandparents, there is no indication in the record that those messages mentioned an ICWA inquiry or that the paternal grandparents were ever asked about either the minors' or father's Native American heritage.

9

Mother claims the failure to inquire into father's Native American heritage was prejudicial because the record is devoid of any information from which his ancestry might be discerned. She likens this case to *In re J.N.* (2006) 138 Cal.App.4th 450. There, the father completed the ICWA form stating he was unaware of any Native American heritage, but there was no such form on record for the mother, and no evidence the mother was ever asked about her ancestry despite her appearance at the jurisdiction/disposition hearing. (*Id.* at p. 461.) Conceding the lack of inquiry, the department argued the error was harmless because nothing in the record indicated the mother had any Native American ancestry. The Court of Appeal rejected the argument, "refus[ing] to speculate about what mother's response to any inquiry would be" (*ibid.*), and reversed and remanded the matter with directions to the juvenile court to make proper ICWA inquiry of the mother (*id.* at pp. 461-462).

Conceding the lack of inquiry here, the Department argues the error was harmless because mother makes no offer of proof or other affirmative assertion that father has Native American heritage or would assert as much if asked. For that proposition, the Department relies on *In re Noreen G.* (2010) 181 Cal.App.4th 1359. There, both parents appealed from a judgment granting a petition pursuant to Probate Code section 1516.5 to declare the minors free from their care, custody, and control and granting visitation rights. The parents claimed, among other things, that the failure to comply with notice and inquiry requirements of the ICWA required conditional reversal of the judgment and remand for additional proceedings. (*Noreen G.,* at p. 1367.) Although the record was devoid of evidence of Native American heritage, the mother made a claim of possible Indian heritage on appeal. (*Id.* at p. 1388.) The Court of Appeal noted that, "[w]here the record below fails to demonstrate and the parents have made no offer of proof or other affirmative assertion of Indian heritage on appeal, a miscarriage of justice has not been established and reversal is not required. (See *In re N.E.* [(2008)] 160 Cal.App.4th 766,

10

770-771; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430-1431.)" (*Ibid.*) However, in light of the mother's offer of proof and assertions of her possible Native American heritage, the appellate court made a limited remand (without reversing the judgment) with directions to the trial court to make proper inquiry and otherwise comply with the notice provisions of the ICWA. (*Noreen G.*, at pp. 1389-1390.)

Mother distinguishes *Noreen G.* (and the cases on which it relies, namely, *N.E.* and *Rebecca R.*), arguing those cases do not address circumstances where, as here, the appellant claims lack of inquiry *as to the other parent*, nor do they place on an appellant the "duty to proffer information concerning the Indian ancestry of the other parent," particularly where there is no evidence in the record suggesting she would have known of father's Native American heritage. She further argues the *Noreen G.* court's comment that a failure to make an offer of proof or other affirmative assertion of Indian heritage on appeal renders the lack of ICWA inquiry harmless error is dicta in light of the fact that the mother there made an offer of proof on appeal regarding her possible Native American heritage. Again, we agree.

Unlike *Noreen G.*, *N.E.*, and *Rebecca R.*, mother asserts the lack of ICWA inquiry as to the other parent. Moreover, there is nothing in the record to suggest that mother could have made an offer of proof regarding father's possible Native American heritage, given that mother and father were never married and did not reside together due to prior incidents of domestic violence. Indeed, given the Department's actual contact with father, the paternal grandmother, and the paternal grandfather, the Department had access to the more likely source of potential ICWA information.

The purpose of the ICWA is, first and foremost, to protect the interests of the Indian child and the child's connection to his or her tribe and to the tribal community. (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 716.) That purpose was not fulfilled here. The duty of inquiry was not satisfied by either the juvenile court or the Department. A

11

failure to conduct a proper ICWA inquiry requires reversal of the orders terminating parental rights and a limited remand for proper inquiry and any required notice. (*In re A.B.* (2008) 164 Cal.App.4th 832, 839; *In re D. T.* (2003) 113 Cal.App.4th 1449, 1454-1456.)

## DISPOSITION

The orders terminating parental rights are reversed and the matter remanded to the juvenile court for the limited purpose of determining whether father has Native American heritage and, if so, to require him to provide all known information to complete the appropriate ICWA form for notice to the relevant tribe or tribes. If father does not identify any Native American heritage or if, after notice, the court determines the ICWA does not apply, the orders terminating parental rights shall be reinstated. If the court finds after inquiry and notice that the ICWA applies, the court shall hold such further proceedings as are appropriate.

                                        BUTZ          , J.

We concur:

     NICHOLSON    , Acting P. J.

     MAURO      , J.