Filed 3/23/22  In re A.W. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.W., A Person Coming Under the Juvenile Court Law. | B312991 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP02218A) |
| Plaintiff and Respondent, | |
| v. | |
| DIONDRIA D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Affirmed.

Caitlin Christian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother Diondria D. appeals the order terminating her parental rights to A.W., arguing the Los Angeles County Department of Children and Family Services (Department) did not comply with the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.), because it made an inadequate inquiry about A.W.'s possible Indian ancestry and the notices sent to the tribes were inadequate. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has a long history of substance abuse, mental illness, child neglect, and exposing her children to physical abuse, sexual abuse, and domestic violence. She has an extensive child welfare history arising from these issues and has failed to reunify with A.W.'s five older siblings. (See *Diondria D. v. Superior Court* (Apr. 23, 2021, B307971) [nonpub. opn.].) Infant A.W. was removed from mother and father J.W. because of the Department's concerns of neglect based on mother's extensive child welfare history, mother's positive marijuana test, and father's positive alcohol test.

The April 20, 2020 petition concerning A.W. states that ICWA does not apply. The detention report reflects that mother and father denied any Indian ancestry on March 9, 2020.

In the dependency case concerning A.W.'s full-blooded sibling, T.W., mother appealed the sufficiency of the Department's ICWA inquiry. Division Seven of this court conditionally affirmed the order terminating mother's parental rights to T.W., and remanded with instructions for further ICWA compliance. (*In re T.W.* (Aug. 14, 2019, B295013) [nonpub. opn.].) Further investigation did not yield any useful information indicating that T.W. was an Indian child. The Department conducted internet searches and was able to find contact

2

information for maternal grandfather and one maternal uncle. However, the people who answered the Department's calls denied any relationship to mother. Further information could not be obtained from mother because her whereabouts were unknown. (We grant the Department's request that we take judicial notice of these records.) Notices to the Cherokee tribes were sent and two tribes responded that T.W. was not eligible for membership, and another tribe did not respond. On February 11, 2020, the juvenile court found that ICWA did not apply, and reinstated the order terminating mother's parental rights.

Notwithstanding compliance with ICWA in the case concerning T.W., and that mother and father denied any Indian ancestry on March 9, 2020, on April 22, 2020 (one day before the detention hearing) mother filed a parental notification of Indian status form (ICWA-020) stating "[o]ne or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe," identifying the Cherokee tribe, and maternal great-grandmother, Evelyn G., as the tribal member. Father's ICWA-020 form stated that he had no known Indian ancestry.

At the April 23, 2020 detention hearing, the court found there was no reason to know that ICWA applied, but ordered mother and father to keep the Department and court aware of any new information relating to any possible Indian ancestry.

The Department's jurisdiction/disposition report noted that mother has three brothers, and that maternal grandfather was still living. Two of her brothers lived in Sacramento, and the other brother's whereabouts were unknown. Mother did not provide any further information about her brothers or maternal grandfather to the Department.

3

At a July 27, 2020 hearing, the juvenile court revisited the ICWA findings, and asked the Department to investigate A.W.'s possible Indian ancestry. Mother told the court she was not a registered or enrolled member of a tribe, and did not know whether she was eligible for membership in a tribe. The court found that without additional information, ICWA did not apply, but ordered the Department to address ICWA in its next report.

The Department interviewed mother on July 28, 2020. Mother said she had Indian ancestry in the Cherokee tribe through maternal great-grandmother; however, maternal great-grandmother died when mother was young. Mother did not know her date of birth. Maternal grandmother was also deceased. Mother reported *there were no other family members who would have information about their Indian ancestry*. Neither maternal grandmother nor maternal great-grandmother was registered with the tribe. Mother "really did not want to pursue this any longer."

On July 28, 2020, the Department sent notice to the Eastern Band of Cherokee Indians, the Cherokee Nation, the United Keetowah Band of Cherokee Indians, the Bureau of Indian Affairs, and the Secretary of the Interior. The notices included maternal grandmother's name and date of birth. The notices also included maternal great-grandmother's name, but no other identifying information.

On September 3, 2020, the Department received certified return receipts that notice was delivered to all three Cherokee tribes, which were filed with the court on September 16, 2020. The Department did not receive any responses from the tribes.

At the September 24, 2020 disposition hearing, the juvenile court declared A.W. a dependent, removed her from parental

custody, bypassed reunification services, and set a Welfare and Institutions Code section 366.26 hearing to select and implement a permanent plan. (All further references are to this code, unless otherwise indicated.) We denied mother's writ petition challenging this order. (*Diondria D. v. Superior Court, supra,* B307971.) Therefore, on May 20, 2021, the juvenile court terminated mother's parental rights. Mother timely appealed.

While this appeal was pending, the Department filed a report indicating it had received a response from the Cherokee Nation that A.W. was not an Indian child.

## DISCUSSION

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8.) ICWA requires notice to Indian tribes "in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court knows or has reason to know that an Indian child is involved.' " (*In re Isaiah W.*, at p. 8.)

Section 224.2 imposes on the juvenile court and the Department "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child . . . ." (*Id.,* subd. (a).) If there is "reason to believe [that an Indian child is] involved in a proceeding," further inquiry regarding the possible Indian status of the child "shall" be made, including "[i]nterviewing . . . extended family members" to obtain the necessary information to notice the tribes. (*Id.,* subd. (e)(1) & (2); see also Cal. Rules of Court, rule 5.481(a).)

If there is reason to believe a child might be an Indian child, the Department must provide notice to the Indian tribes.

5

Notice to the tribes must contain sufficient information to allow the tribe to conduct a meaningful review of its records to determine the child's eligibility for membership. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 705.) Section 224.3 requires the notices to include "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, place of birth and death, tribal enrollment of other direct lineal ancestors of the child, and any other identifying information, if known." (*Id.,* subd. (a)(5)(C).)

The adequacy of the ICWA inquiry is reviewed for sufficiency of the evidence. (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1160-1161.) The harmless error rule applies to ICWA inquiry challenges. (*In re S.B.,* at p. 1162.) Notice errors are also subject to harmless error analysis. (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251.)

Mother contends the Department's notices were not sent to the correct designated tribal agents (although she does not contend the addresses were incorrect), the notices were missing identifying information about mother's relatives which the Department could have obtained had it better investigated A.W.'s possible Indian ancestry by contacting other maternal relatives, and the Department made no further efforts to ask extended family members about A.W.'s possible Indian ancestry, such as trying again to locate maternal uncles.

We find any purported error to be necessarily harmless. The return receipts confirmed the tribes received the Department's notices, so any purported error in stating the tribal agent's name was immaterial and irrelevant. There is no reason

to believe that further inquiry would result in any more information about A.W.'s alleged heritage or confirmation that she is an Indian child.  (*In re Christopher I.* (2003) 106 Cal.App.4th 533, 567.)  Mother admitted the only people with information about A.W.'s possible Indian ancestry were deceased. Moreover, the inquiry and findings as to T.W., just months before this dependency case, plainly show that ICWA does not apply. (*In re A.B.* (2008) 164 Cal.App.4th 832, 842; see also *In re E.W.* (2009) 170 Cal.App.4th 396, 400-402 [the Department's failure to comply with ICWA was harmless based on prior ICWA efforts as to the child's sibling because "there [wa]s no reason to believe that providing separate notice regarding [this child] 'would have produced different results concerning [this child's] Indian heritage."].)

## DISPOSITION

The order terminating mother's parental rights to A.W. is affirmed.


GRIMES, Acting P. J.

WE CONCUR:



STRATTON, J.



HARUTUNIAN, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7