Filed 12/6/23  In re N.R. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re N.R. et al., Persons Coming Under the Juvenile Court Law. | C097369 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>       Plaintiff and Respondent,<br><br>  v.<br><br>D.R.,<br><br>       Defendant and Appellant. | (Super. Ct. Nos. JV20221201, JV20221202) |

Appellant D.R. (father), father of the minors, M.R. and N.R., appeals from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code, §§ 300, 361, 395.)[1]  Father contends the juvenile court and the Yolo County Health and Human

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

Services Agency (Agency) failed to comply with the notice and inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We will vacate the juvenile court's ICWA finding and remand for limited ICWA proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the sole issue on appeal is ICWA compliance, a detailed recitation of the non-ICWA related facts and procedural history is unnecessary to our resolution of this appeal.

The Agency filed a petition in August 2022, pursuant to section 300, subdivisions (b) and (c), alleging the minors, M.R. (then age 16) and N.R. (then age 13), were at substantial risk of harm. Both allegations stated father had failed to provide adequate support, care, or supervision by causing persistent and pervasive parental alienation of the mother, J.R. (mother), undermining mother's parental authority, and encouraging the minors to leave mother's home "at great physical peril." The petition alleged the minors had displayed significant emotional damage in mother's home. The petition further alleged that mother was unable or unwilling to provide adequate care, support, and/or supervision of the minors.

The juvenile court held an initial hearing on August 9, 2022, and the court found father was the presumed father of the minors. The court detained M.R. from father only and detained N.R. in foster care. On August 19, 2022, M.R. was also detained from mother by the Yolo County Sheriff's Office. The Agency filed an amended petition on August 23, 2022, to reflect M.R.'s detention, alleging that mother failed to adhere to the safety plan. The court held a further detention hearing and ordered M.R. detained from mother.

Pursuant to the ICWA, the Agency inquired of the parents at the outset of the proceedings, and indicated there was reason to believe the children were or may be Indian children. Mother reported the maternal grandmother was a member of the Wiyot Tribe. The maternal grandmother confirmed she is an enrolled member. In its detention

2

report, the Agency indicated it called and emailed the Wiyot Tribe to confirm the minors' eligibility to enroll. The Agency's report stated the tribal representative informed the social worker that the minors were not eligible for enrollment. The Agency further reported it would "continue to make efforts to inquire about Native American heritage," indicating that the ICWA "may apply." Attached to the report were two enrollment verification forms, which listed the minors' and mother's names and dates of birth and the maternal grandmother's name and enrollment number. The Wiyot Tribe indicated on one of these forms that "none of the above are on the Wiyot Tribe Roll," despite the fact the maternal grandmother appeared to have an enrollment number. The Agency's report did not indicate what other information the Agency provided to the Wiyot Tribe or what steps of further inquiry with the minors' extended family members were undertaken, if any. Additionally, the report did not indicate what inquiry was made of father, if any.

On August 9, 2022, the juvenile court found there was reason to believe the children were Indian children and ordered the Agency to complete further inquiry. The maternal grandmother was present at the hearing, and the potential eligibility for membership in the Wiyot Tribe was noted. At the jurisdictional hearing on August 25, 2022, the court inquired about father's ancestry, and he denied having any Native American heritage. The maternal grandmother was present in court and explained that she contacted her tribe and was informed that the minors were not eligible to become tribal members.

The Agency's September 22, 2022, report repeated the information provided in its detention report, adding only that father denied having any Native American ancestry at the jurisdictional hearing, and requested a finding that ICWA did not apply to the minors. On November 3, 2022, the parents were ordered to complete Parental Notification of Indian Status (ICWA-020) forms. The same date, the juvenile court found the ICWA did not apply, and that M.R. was "not an Indian child."

Father timely appealed.

3

## DISCUSSION

Father contends that the Agency and the juvenile court failed to comply with their duty of further ICWA inquiry after the initial inquiry showed there was reason to believe the minor may be eligible for tribal membership. Specifically, he contends that mother claimed possible Indian ancestry through the Wiyot Tribe and, while the Agency had some contact with the tribe, it failed to document its efforts and what information was provided to the tribe. He further contends that there is no indication that the Agency contacted the Bureau of Indian Affairs (BIA) or State Department of Social Services. (§ 224.2, subd. (e)(2).) He contends the juvenile court failed to ensure the Agency's compliance with the ICWA. We agree and, as we explain, the failure to fully comply with the requirements of the ICWA requires remand for further proceedings.

As this court recently explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be

4

an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  (*Id*., subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.  (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)"  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)  We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence.  (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Here, mother's disclosure that she had Native American ancestry through the Wiyot Tribe gave the Agency and the juvenile court "reason to believe" the minors were Indian children within the meaning of the ICWA, triggering the Agency's duty of "further inquiry" under the ICWA.  (§ 224.2, subd. (e)(1), (2); see *In re T.G.* (2020) 58 Cal.App.5th 275, 292; *In re D.S., supra*, 46 Cal.App.5th at p. 1052.)  The Agency was thus required to follow the provisions set forth in section 224.2.  "Further inquiry" includes interviewing the parents, Indian custodian, and extended family members to gather available familial and tribal enrollment information.  (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5).)  "Further inquiry" also includes contacting the BIA and State Department of Social Services for assistance with identifying tribes in which the child may be a member of or eligible for membership.  (§ 224.2, subd. (e)(2)(B).)  Finally, "further inquiry" also includes contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.  (§ 224.2, subd. (e)(2)(C).)  Contact with a tribe, for the purpose of the duty of further inquiry, "shall, at a minimum, include telephone, facsimile, or electronic mail

5

contact to each tribe's designated agent for receipt of notices under the [ICWA]" and "include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (*Ibid.*)

The Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S., supra*, 46 Cal.App.5th at p. 1053.) However, the Agency *is* required to include in its reports a discussion of what efforts it undertook to locate and interview family members who might have pertinent information and, "[i]n the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484.) The record makes no such affirmative showing here.

Mother claimed possible Native American heritage through the maternal grandmother, who was a member of the Wiyot Tribe. The Agency's reports indicate that the extent of its inquiry was that it contacted a tribal representative, and that the representative stated the minors were not eligible for enrollment. This was not an adequate further inquiry under section 224.2, subdivision (e)(2). The record does not show that the Agency made an adequate effort to locate and interview extended family members, or others who may have had information regarding the minors' status as Indian children. Although the Agency had some contact with the maternal grandmother, the record does not show whether the Agency contacted any other maternal relatives to obtain any further pertinent information. Nor does the record show that the Agency contacted the BIA and State Department of Social Services pursuant to section 224.2, subdivision (e)(2)(B). (See *In re K.T.* (2022) 76 Cal.App.5th 732, 744 [a child welfare agency "does not discharge [its] duty of further inquiry until [it] make[s] a 'meaningful effort' to locate and interview extended family members and to contact [the] BIA and the

6

tribes"].) While the Agency asserts the requirement to contact the BIA did not apply because the Agency already had the name and contact information of the Wiyot Tribe, it is unclear from the record whether the minors may be eligible for membership in any additional tribes and whether the Agency undertook appropriate further inquiry to make that determination. (§ 224.2, subd. (e)(2)(B).) The Agency should have, at a minimum, after conducting such further inquiry, listed what information it was able to gather from these sources, what information was identified by the tribe as necessary for the tribe to make a membership or eligibility determination, and demonstrate that it provided this information to the tribe. (§ 224.2, subd. (e)(2)(C).)

The only information that the record discloses the Agency provided to the Wiyot Tribe was the minors' and parents' names and birthdates and the maternal grandmother's name and purported enrollment number. Indeed, it appears that some part of this information may have been inaccurate because the Wiyot Tribe indicated on one of the enrollment verification forms that the maternal grandmother was not on the tribal roll despite the fact the maternal grandmother appeared to have an enrollment number and insisted in court that she was enrolled. These forms, and the Agency's report, do not disclose any other family history or family members' names and information. Nor do they disclose what information the Wiyot Tribe identified as necessary for the tribe to make a membership or eligibility determination. While the Agency contends that the maternal grandmother confirmed the minors were not eligible for enrollment, the Agency may not defer its duty of inquiry to a third party. For these reasons, we conclude the Agency did not adequately discharge its duty of "further inquiry," and as such, the juvenile court's finding that the ICWA did not apply was not supported by substantial evidence. (See *In re Rebecca R., supra*, 143 Cal.App.4th at p. 1430.)

Limited remand is necessary for the Agency to adequately discharge its duty of further inquiry under section 224.2. If that further inquiry results in a reason to know the minors are Indian children within the meaning of the ICWA, then the formal notice

7

requirements of section 224.3 apply.  The Agency either did not take sufficient affirmative steps to investigate the minors' possible Indian ancestry or did not document its efforts to do so, and the juvenile court failed to ensure that an adequate investigation had been conducted.  In the absence of evidence of the Agency's efforts to fulfill its continuing duty of inquiry, we cannot say the failure of ICWA compliance was harmless.  A failure to conduct a proper ICWA inquiry requires a limited remand for proper inquiry and any required notice.  (*In re A.B.* (2008) 164 Cal.App.4th 832, 839; *In re D.T.* (2003) 113 Cal.App.4th 1449, 1454-1456.)  We must therefore vacate the juvenile court's ICWA finding and remand for limited proceedings consistent with this opinion.

## DISPOSITION

The juvenile court's finding that the ICWA does not apply is vacated and the matter is remanded for further ICWA compliance proceedings, consistent with this opinion, whereafter the juvenile court shall enter new ICWA findings.  If the minors are found to be Indian children, the juvenile court shall proceed in compliance with the ICWA, including considering any petition filed to invalidate prior orders.  (25 U.S.C. § 1914; § 224, subd. (e).)


 /s/ 
Keithley, J.*


We concur:


 /s/ 
Earl, P. J.


 /s/ 
Mesiwala, J.

---

*      Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.