Filed 8/12/21  In re K.M. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re K.M. et al., Persons Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>Brittany W.,<br><br>          Defendant and Appellant. | A162027<br><br>(Contra Costa County Super. Ct. Nos. J1800804/J1800805) |

Brittany W. (mother) appeals from a juvenile court order terminating parental rights as to her daughter, K.M., at the conclusion of a permanency planning hearing (Welf. & Inst. Code § 366.26).[1]  She contends the Contra Costa County Children and Family Services Bureau (Bureau) and the court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq., ICWA).

We affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

## BACKGROUND

We recite only those facts necessary to resolve the issue on appeal.

### A.

In August 2018, the Bureau filed a section 300 petition alleging mother failed to provide "basic necessities" for K.M., then seven years old. The petition averred Thomas M. was K.M.'s alleged father. Mother and Thomas are not married. The court detained K.M., declared her a dependent, and ordered reunification services for mother. Later, the court terminated mother's reunification services. In December 2020, the court held a permanency planning hearing and terminated mother's parental rights.

### B.

Mother completed a parental notification of Indian status (ICWA-020 form) stating "father" had possible "Blackfoot" ancestry through his paternal grandmother and great-grandmother. Mother denied Indian ancestry. The Bureau mailed an ICWA-020 form to Thomas at his last known address, but it was returned as undeliverable.

At the November 2018 jurisdictional hearing, the court noted mother's ICWA-020 form indicated Indian ancestry "on the paternal side of the family" and questioned whether the court could "make an ICWA finding." Counsel for the Bureau responded: "I think what the mother is indicating [is] that [Thomas] has Indian heritage but she herself has none." The court agreed. It determined mother was making "assumptions" about Thomas's Indian ancestry and not her own "side of the family," and noted "there's no evidence" K.M. was an Indian child or that ICWA applied. Then the court asked whether anyone disputed that finding. Neither mother nor Thomas M. were present at the hearing. But all counsel—including mother's counsel—responded, "No." The court deemed ICWA inapplicable.

Thomas made his first court appearance in October 2020, shortly before the original permanency planning hearing date. The court declared him K.M.'s presumed father. Neither the Bureau nor the court directed Thomas to complete an ICWA-020 form. The court made no further ICWA findings.

**DISCUSSION**

The purpose of ICWA is to protect the interests of Indian children and promote "the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions." (*In re E.G.* (2009) 170 Cal.App.4th 1530, 1533.) Juvenile courts and social services agencies " ' "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child." ' " (*In re S.R.* (2021) 64 Cal.App.5th 303, 313; § 224.2.)

The social services agency's initial duty of inquiry includes asking parents, legal guardians, and others " ' "whether the child is, or may be, an Indian child. . . ." [Citation.] The juvenile court must ask the participants in a dependency proceeding upon each party's first appearance "whether the participant knows or has reason to know that the child is an Indian child" [citation], and "[o]rder the parent . . . to complete Parental Notification of Indian Status . . . form ICWA-020[.]" ' " (*In re S.R.*, *supra*, 64 Cal.App.5th at p. 313.)[2] "If the court fails to ask a parent about his . . . Indian heritage, a limited reversal of an order or judgment and remand for proper inquiry and any required notice may be necessary. [Citation.] Reversal is not warranted,

_____

[2] If, after a dependency petition is filed, the court "knows or has reason to know . . . that an Indian child is involved," notice of the proceeding and the right to intervene must be sent to the tribe or the Bureau of Indian Affairs if the tribal affiliation is unknown. (§ 224.3.)

however, when the court's noncompliance with the inquiry requirement constitutes harmless error." (*In re A.B.* (2008) 164 Cal.App.4th 832, 839.)

Mother contends the order terminating parental rights must be conditionally reversed and the matter remanded for ICWA compliance because the Bureau did not ask Thomas about his possible Indian ancestry or direct him to complete an ICWA-020 form when he made his first court appearance. This claim fails because—as mother recognizes—Thomas is K.M.'s presumed father.

The " ' "extent to which a father may participate in dependency proceedings and his rights in those proceedings are dependent on his paternal status." ' " (*In re C.A.* (2018) 24 Cal.App.5th 511, 521.) Presumed father status "entitles the father to receive reunification services and is based on the state's interest in ' "preserving the integrity of the family and legitimate concern for the welfare of the child." ' [Citation.] This status, however, is not equivalent to the status of a biological or adoptive parent." (*Ibid.*; *In re Zacharia D.* (1993) 6 Cal.4th 435, 450, fn. 18 [man may achieve presumed father status without being a biological father].)

The necessity of a biological connection is evident in the ICWA's definition of "Indian child" and "parent." As relevant here, ICWA "defines 'Indian child' as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the *biological child* of a member of an Indian tribe.' [Citation.] The necessity of a biological tie to the tribe is underlined by the ICWA definition of a 'parent' as 'any *biological parent* . . . of an Indian child[.]' " (*In re E.G., supra,* 170 Cal.App.4th at p. 1533, italics added.)

In this context, a "parent" does " 'not include the unwed father where paternity has not been acknowledged or established.' " (*In re C.A.*, *supra*, 24 Cal.App.5th at p. 520; *In re Daniel M.* (2003) 110 Cal.App.4th 703, 708–709 [alleged father could not contest termination of parental rights based on lack of ICWA notice].)

In a footnote on the last page of her opening brief, mother urges us to overlook the absence of an established biological connection between Thomas and K.M. because Thomas's status as a "biological parent was never in dispute." We reject this assertion because it is unsupported by legal analysis or a citation to the record. (*In re Daniel M.*, *supra*, 110 Cal.App.4th at p. 708.) Mother presents no evidence that Thomas is the biological father of K.M. or that he claimed a biological relationship with her. Thomas told the Bureau he was "listed on [K.M.'s] birth certificate" but the record does not contain K.M.'s birth certificate, a declaration of paternity filed at the time of birth, or a blood test establishing paternity. (*Id.* at pp. 708–709.) Because the issue of biological paternity was not litigated, the juvenile court made no finding that Thomas is K.M.'s biological father. We decline to make such a finding for the first time on appeal. (See *In re Margarita D.* (1999) 72 Cal.App.4th 1288, 1296.)

To be sure, social service agencies and juvenile courts should err on the side of " ' "examining thoroughly" ' " whether a child is an Indian child. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 15.) We acknowledge the Bureau did not complete an ICWA inquiry as to Thomas, and that such an inquiry might have produced information regarding his Indian ancestry. But any information about Thomas's Indian ancestry is of no consequence in the absence of an established biological connection between Thomas and K.M. (*In re B.R.* (2009) 176 Cal.App.4th 773, 785 ["impossible" for child to be

5

Indian child absent adoptive or biological relationship to tribal member]; *In re C.A., supra,* 24 Cal.App.5th at p. 521 [applying ICWA notice requirements to presumed father "would result in an improper expansion of the definition of an Indian child contained in the statute"].)

Mother's opening brief does not argue the failure to conduct an inquiry into Thomas's potential Indian ancestry was prejudicial.  We can conceive of no prejudice where—as here—mother does not assert she has Indian ancestry.  (See *In re A.B., supra,* 164 Cal.App.4th at pp. 842–843 [failure to discharge duty of inquiry was harmless where mother denied Indian heritage].)  In the absence of prejudice, a conditional remand for ICWA inquiry as to Thomas would further delay permanency and stability for K.M., who has been part of the dependency system for three years.[3]

" 'Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way.' "  (*In re H.B.* (2008) 161 Cal.App.4th 115, 122 [error in failing to comply with inquiry requirements was harmless].)

## DISPOSITION

The order terminating mother's parental rights as to K.M. is affirmed.

---

[3] The Bureau now takes the position that the court was obliged to ask Thomas about his Indian ancestry, and its failure to do so requires a conditional reversal.  We decline to accept this concession, especially given that it is premised on a mistaken understanding of the law.  (See *People v. Sanders* (2012) 55 Cal.4th 731, 740; *People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1020–1021; *Bradley v. Clark* (1901) 133 Cal. 196, 210.)

_____
Rodriguez, J.*

WE CONCUR:


_____
Simons, Acting P. J.


_____
Needham, J.

A162027

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.