Filed 2/14/22  In re E.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re E.S., a Person Coming Under the Juvenile Court Law. | C093770 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD240889) |

J.S., the minor's mother, appeals from the juvenile court's orders exercising dependency jurisdiction and removing the minor from her custody.  She argues the Sacramento County Department of Child, Family and Adult Services (the Department) failed to comply with the requirements of the Indian Child Welfare Act (the ICWA) because the Department did not adequately inquire into mother's claim of possible

1

Choctaw heritage.  (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224.2.)[1]  We will affirm the juvenile court's orders.

FACTUAL AND PROCEDURAL BACKGROUND

We will limit our discussion of the facts to those relevant to the issue on appeal. In October 2020, the Department filed a petition under section 300 alleging mother had a substance abuse problem that made her incapable of providing care to the then 14-year-old minor, who was particularly vulnerable because of a diagnosis of autism spectrum disorder.  The petition also noted the Department had conducted an inquiry and determined minor's parents, grandparents, or great-grandparents were members of the Choctaw tribe.

The Department filed a detention report, which included information about minor's Native American heritage.  Father denied any Native American heritage, but mother stated she had Native American heritage with the Choctaw tribe through the maternal grandmother.  On October 8, 2020, mother told a social worker the maternal aunt might have more information but then became upset with the social worker and did not provide contact information for the aunt or any other Native American heritage information.  On October 9, 2020, a social worker left a message with the Bureau of Indian Affairs (the BIA) to gain more information on minor's heritage and notified the BIA of the detention hearing.

On October 14, 2020, father filed an ICWA-020 form indicating he had no Native American ancestry.  The same day, mother filed an ICWA-020 form and checked the box stating, "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe."  Mother wrote "Choctaw heritage" in the blank under the box. On the same day, the juvenile court held a detention hearing and asked about the Native

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

American heritage. Mother indicated she had two sisters who were enrolled in the Choctaw tribe and the court found there was reason to believe minor was an Indian child. The court directed the Department to "complete a due diligence regarding the Indian ancestry."

In November 2020, the Department filed a jurisdiction/disposition report. In the report, mother stated she had Native American heritage with the Choctaw tribe through the maternal grandmother, but mother had never enrolled with the tribe. Mother stated the minor had Indian heritage, although neither her residence nor the minor's residence were on an Indian reservation or in a predominantly Indian community. The Department reported it used the BIA to identify the names and contact information for relevant tribes, and contacted those tribes. In particular, a social worker attempted to contact the Choctaw tribe on October 29 and October 30, 2020, by phone, and spoke with the BIA, which directed the social worker to call back on November 2 to obtain enrollment information. Later in November 2020, the Department filed the first addendum to the jurisdiction/disposition report.

In December 2020, the Department filed the second addendum to the jurisdiction/disposition report. A social worker contacted the BIA on December 2 and 7, and left voicemail messages both times. A social worker also left a voicemail message with the Mississippi Band of Choctaw Indians on December 7.

On December 9, 2020, a social worker e-mailed the Choctaw Nation of Oklahoma and provided minor's name and date of birth, as well as the names of the maternal grandparents, their roll numbers, and dates of birth. The next day, a representative from the Choctaw Nation of Oklahoma replied by e-mail, saying she did not find minor or mother "in their system." She did find the maternal grandparents each had a "Certificate of Degree of Indian Blood" indicating they were Choctaw, but they were never enrolled as members of the tribe. The representative also indicated mother and minor "should be eligible to enroll to the Choctaw Tribe and become members," and she sent the social

3

worker the required application for membership. The social worker forwarded the information and application materials to mother.

On February 5, 2021, the juvenile court held the contested jurisdiction/disposition hearing. At the hearing, the court observed that minor "may be eligible for enrollment but is not currently enrolled. And because of that, the Choctaw tribe does not presently recognize him as a member of the tribe. There apparently are forms that can be completed to enroll [minor], but that has not been done yet. [¶] So as things currently stand, I believe the record would reflect that presently [minor] is not a Native American child as that term is defined by the federal statute. He may become one if the papers get submitted and if the tribe accepts him for enrollment. But as we stand now, I believe the Court could find that he's not a Native American child such that we would not have to do further inquiry or noticing unless new and different information came before the Court."

The court encouraged mother to pursue enrollment in the tribe, and concluded "the Department has made the appropriate inquiries. It has determined that [minor] is not currently enrolled, nor are his parents enrolled. And the tribe has said that he is, therefore, not a member of the tribe. So our finding today is based on that record and that evidence. It is, as I said, subject to change, so we will revisit that if the circumstances change." The court ultimately sustained the allegations in the petition, removed mother's physical custody of minor, and ordered reunification services. Mother filed a notice of appeal on March 15, 2021.

During briefing of this case, we granted a request to augment the record to include documents filed in the underlying proceedings in August 2021. On August 26, 2021, the Department filed an ICWA compliance report which indicates a social worker spoke by telephone on August 25, 2021, with a representative at the Jena Band of Choctaw and confirmed there was no record of minor or mother in their database, and that enrollment was a prerequisite for membership in the tribe. Also on August 25, 2021, a social worker attempted to contact the Mississippi Band of Choctaw by telephone, and left a voicemail

4

asking for information about minor and mother. The Department noted it was trying to obtain funding to pay for the mother's birth certificate to include in minor's tribal enrollment application.

On August 31, 2021, the Department filed an addendum to the ICWA compliance report. On July 26, 2021, a social worker spoke with a representative from the Choctaw Nation of Oklahoma about mother's tribal enrollment application. Mother had submitted an incomplete application, and the representative told the social worker that mother's and minor's birth certificates would need to be on file to enroll minor. The Department requested and was waiting for minor's birth certificate and funding to obtain mother's birth certificate.

A social worker had also attempted to contact the Mississippi Band of Choctaw on August 12, 2021, by telephone. The social worker reported that the line rang without an option to leave a voicemail. The Department found an enrollment checklist providing another phone number for the tribe, so on August 19, 2021, the social worker attempted to call both the original number and the alternative contact number. Both lines rang without any option to leave a voicemail. The following week, a social worker called the alternative contact number again and this time was able to leave a voicemail, but no response had been received by the time of the report.

On August 31, 2021, the juvenile court determined the Department had complied with its ICWA requirements and had "either had direct contact with the identified Tribes or . . . received a written, a verbal or no response." Thus, minor was not an Indian child under the ICWA "absent new evidence or information."

DISCUSSION

Mother contends the court's ICWA findings must be reversed because the Department failed to comply with the ICWA's inquiry requirements. In particular, mother argues the Department failed to contact minor's extended family members and the Jena Band of Choctaw Indians, and the court's finding that mother and minor "were not

5

members of the Choctaw tribe" was not supported by substantial evidence. We find no merit in mother's arguments.

"The juvenile court and social services agencies have an affirmative duty to inquire at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child. [Citation.]" (*In re K.M.* (2009) 172 Cal.App.4th 115, 118-119; § 224.2, subd. (c).) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).)

"[S]ection 224.2 creates three distinct duties regarding [the] ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.,* subd. (e) . . . .) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S., supra*, 46 Cal.App.5th at p. 1052, original italics.)

Once a court or social worker has a reason to believe a child is an Indian child, section 224.2, subdivision (e) explains the "further inquiry regarding the possible Indian status of the child" includes, but is not limited to: (1) interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3;[2] (2) contacting the BIA and the State Department

---

[2] Section 224.3, subdivision (a)(5)(A)-(C) includes the name, birth date and birthplace of the Indian child, if known; the name of the Indian tribe; and the names and other identifying information of the Indian child's biological parents, grandparents, and great-grandparents, if known.

of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in; and (3) contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e)(2)(A)-(C).)

"The juvenile court may alternatively make a finding that [the] ICWA does *not* apply because the Agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered.  (§ 224.2, subds. (i)(2), (g).)  Even if the court makes this finding, the Agency and the court have a continuing duty under [the] ICWA, and the court 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' (§ 224.2, subd. (i)(2).)"  (*D.S., supra*, 46 Cal.App.5th at p. 1050, original italics.)

Section 224.2, subdivision (d) provides that a juvenile court has *reason to know* a child involved in a proceeding is an Indian child under any of the following circumstances:  "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)-(6).)

We review the juvenile court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467; *D.S., supra*, 46 Cal.App.5th at p. 1051.)

Here, when the case first began, mother stated she had Choctaw ancestry through the maternal grandmother, which the juvenile court confirmed at the detention hearing. The court determined there was reason to believe the minor was an Indian child and directed the Department to conduct an inquiry. Mother told the Department the maternal aunt might have more information on her Native American heritage but did not give the maternal aunt's contact information to the Department. The Department then contacted the BIA to obtain the relevant tribal contact information.

The Department contacted three separate Choctaw tribes. On December 10, 2020, a social worker contacted the Choctaw Nation of Oklahoma via e-mail, and a representative confirmed the maternal grandparents each had a certificate of degree of Indian blood showing they were Choctaw, although they "were never enrolled as [members] with the Tribe." Thus, the representative explained, mother and minor "should be eligible to enroll to the Choctaw Tribe and become members." The representative provided the application materials for enrollment to the social worker, who forwarded them to mother. By July 2021, mother had attempted to apply for membership, but was unsuccessful because she did not enclose her or minor's birth certificates, which were also required for the minor to obtain membership. The Department was assisting mother in obtaining both birth certificates.

On December 7, 2020, a social worker left a voicemail message asking for information from the Mississippi Band of Choctaw Indians. Later, on August 12, 2021, a social worker attempted to call the band again, but the line rang without an option to leave a voicemail. This happened again the following week, with two separate contact numbers the social worker used. The week after that, the social worker was able to leave a voicemail, but did not receive any response.

8

The last tribe the Department contacted was the Jena Band of Choctaw. On August 25, 2021, a social worker spoke with a representative, who confirmed neither minor nor mother was in their tribal database. The representative also confirmed enrollment was a prerequisite for membership in the tribe. Contrary to mother's argument, the Department thus did, in fact, contact the Jena Band of Choctaw.[3]

Mother contends the Department's inquiry efforts were inadequate because the Department never contacted her extended family members, including the maternal grandparents or aunts. The Department did attempt to get contact information for mother's relatives, but mother did not provide the information and she later stated she had "no contact" with the maternal aunts. The Department was not required to " 'cast about' " for information or pursue unproductive investigative leads. (*D.S., supra*, 46 Cal.App.5th at p. 1053; see *In re S.B.* (2005) 130 Cal.App.4th 1148, 1161; *In re C.Y.* (2012) 208 Cal.App.4th 34, 42; *In re A.M.* (2020) 47 Cal.App.5th 303, 323.) And, in any case, the Department was able to obtain the relevant information, including the maternal grandparents' names, birth dates, and enrollment numbers, on its own and confirmed that information with the Choctaw Nation of Oklahoma. Because the point of contacting extended family members is to gather such information, we see no prejudice in failing to interview the maternal relatives. (§ 224.3, subd. (a)(5) [describing the relevant information to obtain in a section 224.2, subdivision (e)(2)(A) inquiry].)

---

[3]    Mother's opening brief was filed on June 14, 2021, before the Department spoke with the tribal representative, and before the record was augmented with this information. Even assuming the Department initially erred in failing to contact the Jena Band of Choctaw, its later efforts established mother and minor's lack of membership in that tribe, and any error was thus harmless. (*In re A.B.* (2008) 164 Cal.App.4th 832, 843; *Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 867.) Likewise, the juvenile court's conclusion the Department had conducted a sufficient factual inquiry even absent the contact was, at worst, premature, and not prejudicial.

Finally, mother argues the juvenile court erred when it found she and minor were not tribal members because the court misconstrued the social worker's statements regarding her e-mails with the Choctaw Nation of Oklahoma, which never provided "confirmation in writing . . . indicating enrollment . . . was a prerequisite for membership under tribal law." Mother also appears to take issue with the fact that the Department did not attach a copy of the e-mail it received from the Choctaw Nation of Oklahoma to the report. First, however, "section 224.2, subdivision (e) does not require that the Department report its inquiry efforts to the juvenile court in the form of a declaration or in any particular form at all." (*In re M.W.* (2020) 49 Cal.App.5th 1034, 1046.) The Department may demonstrate its efforts and due diligence via reports, declaration, or testimony. (*Ibid.*; see § 224.2, subd. (g).)

Second, the e-mail responses were sufficient evidence to conclude both that the minor was not currently enrolled in the tribe and that enrollment in the tribe was required for membership. In the initial e-mail, a tribal representative told the Department that although minor was not in their system, he would "be eligible to enroll [in] the Choctaw Tribe and become [a] member[ ]." To do so, he "would have to complete the attached application and provide required documents." These written statements indicate that minor would need to complete an enrollment application before becoming a member of the tribe.

Moreover, in a later report, the Department inquired with the tribe about mother's enrollment application and was told it was missing key documents. A social worker asked if minor "could be enrolled in the tribe without the mother being enrolled," and was told the tribe would still need to have mother's birth certificate on file. The tribal representative explained that "once the mother and child are enrolled, . . . the tribe will intervene as a third party however will likely not request to take jurisdiction and will reserve that right." Because intervention would only be permitted once the minor was determined to be an Indian child, and the minor would only be an Indian child once he or

10

mother became a member of a tribe, the representative's statement supported the conclusion that membership was contingent on the successful completion of the enrollment applications. (25 U.S.C. § 1903(4); §§ 224.1, subd. (a), 224.4.) Thus, it was appropriate for the juvenile court to conclude minor was not yet a member of the tribe and the ICWA did not apply. (See § 224.2, subd. (h); *In re K.P.* (2015) 242 Cal.App.4th 1063, 1072.)

We note that the "juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 14), and minor's status as a non-Indian child may change in the future. (*Id.* at pp. 11-12.) The Department has been working with the Choctaw Nation of Oklahoma to facilitate mother and minor's enrollment applications, and the juvenile court left open the possibility the ICWA may apply if it receives "new evidence or information." We encourage the Department and juvenile court to remain mindful of their continuing responsibilities under the ICWA, and our opinion should not be read to preclude or limit any tribe's rights or remedies for the remainder of the case.

## DISPOSITION

The orders of the juvenile court are affirmed.

                                                       KRAUSE                , J.

We concur:


RAYE                , P. J.


HULL                , J.

11