Filed 5/3/23  In re C.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re C.B., a Person Coming Under the Juvenile Court Law. | C097138 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.B.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2020-0000380) |

Appellant J.B. (mother), mother of the minor C.B., appeals from the juvenile court's judgment terminating her parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends the juvenile court and the San

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

Joaquin County Human Services Agency (Agency) failed to comply with the notice and inquiry requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). We will conditionally affirm and remand for limited ICWA proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the sole issue on appeal is ICWA compliance, a detailed recitation of the non-ICWA related facts and procedural history is unnecessary to our resolution of this appeal.

Mother gave birth to the minor in August 2020, at which time both mother and the minor tested positive for amphetamines. The minor remained in the neonatal intensive care unit and was later detained. Prior to detention, mother identified a number of men who could potentially be the minor's biological father. Mother initially stated she was unaware of any Indian ancestry, but during subsequent inquiries she stated her grandmother on her father's side was adopted and was full blooded Native American. Mother did not know her grandmother's birthdate but claimed she was part of the Cherokee and Iroquois Indian tribes. Mother filed a parental notification of Indian status form (Judicial Council Forms, form ICWA-020) to that effect.

On October 15, 2020, the Agency filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (g). The minor was in the temporary care of the maternal great-grandmother.

At the jurisdictional hearing on October 29, 2020, the court asked mother about possible Indian ancestry and mother claimed affiliation with the Cherokee Nation. Mother still could not identify the minor's biological father, but she provided the court with the names of several potential individuals and agreed to provide more information to the social worker. At the continued jurisdictional hearing on November 12, 2020, the Agency informed the court that mother had identified six possible fathers for the minor, but the Agency had only been able to locate two. The court ordered paternity testing of the two alleged fathers: B.G and S.G.

On December 10, 2020, the social worker questioned maternal grandfather Z.B. about possible Indian ancestry. Maternal grandfather Z.B. stated he may be a member of the Cherokee and Iroquois tribes and signed a parental notification of Indian status form indicating possible Indian heritage with the Cherokee tribe. Maternal grandmother M.V. signed a parental notification of Indian status form indicating she had no known Indian ancestry. At the time, the identity of the minor's biological father was still unconfirmed, and the Agency was investigating six alleged fathers whose names were provided by mother.

On January 11, 2021, the social worker questioned B.G., one of the alleged fathers, about his Indian ancestry. B.G. claimed possible Indian heritage but could not identify a particular tribe. The social worker provided him with a parental notification of Indian status form and a prepaid return envelope.

On January 28, 2021, although B.G. was not present, the court found B.G. (father) to be the biological father of the minor and sustained the allegations in the dependency petition. The Agency filed a subsequent petition pursuant to section 342, which included allegations as to father.[2]

On February 23, 2021, the Agency sent ICWA notices to the Bureau of Indian Affairs (BIA), and numerous Cherokee, Chippewa, and Iroquois Indian tribes. The notices included identifying information for mother, father, the maternal grandparents, the paternal grandparents, and the maternal great-great grandparents.

Both mother and father failed to appear for the March 18, 2021, jurisdictional hearing on the section 342 petition. The court sustained the allegations and set the matter for a dispositional hearing.

---

[2] It is unclear from the record whether the juvenile court ever found father anything more than a biological father. Nonetheless, for purposes of the ICWA, this establishment of paternity is sufficient to trigger its application.

On April 28, 2021, the Agency filed a declaration regarding its ICWA efforts and requested the court find the ICWA inapplicable. The declaration stated ICWA notices were sent to over 30 Indian tribes and the BIA. Of those over 30 Indian tribes, most responded stating the minor was neither a member nor eligible for membership in the respective tribe. The Agency had not received responses from six tribes during the more than 60 days since the notices were mailed. Thereafter, the Agency received responses from two of the remaining six tribes stating the minor was not eligible for membership.

Both parents were in custody and not present at the June 17, 2021, disposition hearing. The court bypassed both parents for reunification services, found the minor may be an Indian child within the meaning of the ICWA, and set the matter for a section 366.26 hearing.

On October 13, 2021, the date set for the section 366.26 hearing, mother's counsel requested that the court order the Agency to send ICWA notices to the Saint Regis Mohawk Tribe and the Little Shell Chippewa Tribe of Chippewa Indians in Montana, a recently recognized tribe. The Agency argued notice to those tribes was neither required nor mandated and stated, "However, the Agency will look into it. If needed, we will obviously meet our ICWA obligations." The court's minute order states, "[Agency] to [l]ook into ICWA for [p]arents."

In its October 2021 section 366.26 and status review reports, the Agency stated the court "reviewed the ICWA-030 documents and ordered that ICWA does not apply." On October 27, 2021, the court adopted the Agency's proposed findings and orders (which did not include a finding regarding ICWA applicability).

On April 26, 2022, the Agency filed proposed findings and orders concerning the ICWA that reiterated all prior information regarding the Agency's inquiries and investigation. The juvenile court executed the order finding the minor was not an Indian child within the definition of the ICWA. The June 2022 status review report also reiterated the prior information and noted the court's finding of ICWA inapplicability.

4

After numerous continuances, the section 366.26 hearing commenced on October 4, 2022. At the time, the minor was placed in the care of the maternal grandmother who was committed to adopting the minor. Following testimony and argument, the court terminated parental rights, freeing the minor for adoption. In so ordering, the court added that "[a]ll prior orders not in conflict with this order shall remain in full force and effect."

## DISCUSSION

Mother contends she and father claimed possible Indian ancestry and, while the Agency sent ICWA notices to numerous tribes, it failed to inquire of relatives known to it both before and after mother provided the names of additional tribes with which she might be affiliated and it failed to document its efforts in that regard. She further contends the juvenile court failed to ensure the Agency's compliance with the ICWA. We agree in part and, as we explain, the failure to fully comply with the requirements of the ICWA requires conditional affirmance and remand for further proceedings.

ICWA's purpose is to protect the interests of Indian children and promote the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912; *In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8.) The juvenile court and the Agency have an affirmative and continuing duty to inquire whether a child is, or may be, an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a); see *In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.) If, after the petition is filed, the juvenile court knows or has reason to know that an Indian child is involved (25 U.S.C. § 1912(a)), notice of the pending proceeding and the right to intervene must be sent to the tribe or the BIA if the tribal affiliation is not known. (See §§ 224.2, subds. (d) & (f), 224.3, subds. (a)-(g); Cal. Rules of Court, rule 5.481(b); *In re Robert A.* (2007) 147 Cal.App.4th 982, 989.) "At that point, the social worker is required, as soon as practicable, to interview the child's parents, extended family members, the Indian custodian, if any, and

5

any other person who can reasonably be expected to have information concerning the child's membership status or eligibility." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see Cal. Rules of Court, rule 5.481(a)(4)(A); § 224.2, subd. (b).)

ICWA notices must include all of the following information, if known: the child's name, birthplace, and birthdate; the name of the tribe in which the child is enrolled or may be eligible for enrollment; names and addresses of the child's parents, grandparents, great-grandparents, and other identifying information; and a copy of the dependency petition. (§ 224.3, subd. (a)(5)(A)-(D); *In re Mary G.* (2007) 151 Cal.App.4th 184, 209.)

We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

A. *Evidence of Mother's Indian Heritage*

Here, mother claimed possible Indian heritage. She claimed her grandmother (the minor's maternal great-grandmother on the maternal grandfather's side of the family) was adopted and was "full-blooded Native American." Mother did not know her grandmother's birthdate but stated she was part of the Cherokee and Iroquois tribes. Mother claimed possible affiliation with both of those tribes on her parental notification of Indian status form. The ICWA notice sent to the tribes included mother's names, current and former addresses, birthdate, birthplace, and over 30 tribes with which she might be affiliated.

The ICWA notices further provided identifying information for maternal great-grandmother T.B., maternal great-grandmother J.W., maternal great-grandfather D.V., and maternal great-grandfather L.B. The notices included potential tribes as to T.B. and D.V. only. The notices also included identifying information for two maternal great-great-grandparents, six maternal great-great-great-grandparents, and one maternal great-great-great-great-grandparent, some of whom were either deceased and others for whom no information was available.

The Agency spoke with maternal grandfather Z.B., who initially claimed heritage with the Cherokee and Iroquois tribes, but then filed a parental notification of Indian status form claiming possible Cherokee heritage only. The Agency also spoke with maternal grandmother M.V. claimed no known Indian ancestry. The ICWA notices sent to the tribes provided identifying information for maternal grandfather Z.B., along with three possible Cherokee tribes, and identifying information for maternal grandmother M.V.

### B. Evidence of Father's Indian Heritage

Father initially claimed possible Indian ancestry but could not identify any particular tribe or tribes with which he might be affiliated. The social worker mailed him a parental notification of Indian status form to be filled out and returned to the Agency, but father never returned the completed form. The Agency's disposition report states: "The ICWA-030 [ICWA notice] that was filed contains information for [father], so no additional information needs to be submitted to the BIA." The ICWA notice sent to the tribes included father's name, his current address, and his birthdate. The ICWA notices also provided identifying information for paternal grandmother S.G. and paternal grandfather J.G., for whom there was no tribal information available. That information included the paternal grandparents' last known physical address.

### C. Analysis

Mother contends the Agency failed to inquire of available relatives of the minor's potential Indian heritage. She contends the Agency knew of maternal grandmother M.V. and maternal great-grandmother J.W. but failed to inquire of them. She contends the Agency did not inquire of anyone on her father's side other than maternal grandfather Z.B., nor did it determine whether her father's mother (the maternal great-grandmother) was alive. She also contends there is no evidence the Agency inquired of paternal relatives despite Father stating he had possible Indian heritage. We are unpersuaded by

7

mother's claims as to the maternal relatives but find merit in her claims as to the paternal relatives.

The bulk of the information obtained by the Agency was from mother's side of the family, and those claiming possible Indian heritage claimed either Cherokee or Iroquois affiliation, with mother subsequently adding possible Chippewa affiliation. The ICWA notices were sent to over 30 tribes and included a significant amount of identifying information regarding mother's relatives going as far back as her great-great-great-great-grandfather. While mother claims there is no evidence the Agency spoke with maternal great-grandmother J.W., the ICWA notices suggest otherwise, setting forth J.W.'s current and former names, current and former addresses, and birthplace, as well as J.W.'s birthdate, information mother did not provide. The ICWA notices also suggest that the Agency obtained identifying information, again from sources unknown, regarding relatives of mother as far back as her great-great-great-great-grandfather; however, those individuals could not be interviewed because they were either deceased or information about them was unavailable. We thus find the Agency's inquiries of mother's side of the family to be sufficient.[3]

Mother also contends the Agency failed to circle back on its previous inquiries and include in its ICWA notices the additional tribes she named in October 2021: the Saint Regis Mohawk Tribe and the Little Shell Chippewa Tribe of Chippewa Indians in Montana. Contrary to mother's assertion, the Saint Regis Mohawk Tribe was among the list of tribes to which ICWA notices were sent. And while that tribe did not respond to

---

[3] The duty to inquire includes inquiry of "extended family members." (§ 224.2, subd. (b).) "Unless otherwise defined by the law or custom of the Indian child's tribe, the term 'extended family members' shall mean 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.'" (25 U.S.C. § 1903(2); accord, § 224.1, subd. (c) [adopting ICWA definition of extended family member].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1049, fn. 6.)

the notice within or beyond the 60-day period, the tribe acknowledged receipt of the notice as evidenced by the signed return receipt. As for the Little Shell Chippewa Tribe of Chippewa Indians in Montana—the tribe mother requested to be notified due to their recent federal recognition—the Agency concedes the tribe was not included in the ICWA notice but argues there could be no harm to the tribe because none of those persons claiming possible Indian heritage ever claimed possible Chippewa ancestry. While it is unclear then why the Agency sent ICWA notices to numerous Chippewa tribes in the first instance, we agree that there was no harm in not re-interviewing relatives previously interviewed or excluding this particular Chippewa tribe from the list of noticed tribes, and mother has not demonstrated any harm in that respect.

Mother argues the Agency failed to adequately document its ICWA efforts. We agree. The Agency's initial ICWA inquiry gave it a reason to believe the minor may be an Indian child, thus triggering its duty under section 224.2, subdivision (e), to conduct further inquiry. The record demonstrates the Agency conducted further inquiry and, although not required to, noticed over 30 tribes and the BIA with extensive information regarding mother and her relatives and limited information regarding father and his parents (the paternal grandparents). That further inquiry resulted in responses from all but four of the tribes stating the minor was neither a member nor eligible for membership in the respective tribe. Given that 60 days passed without responses from the remaining four tribes, there was no reason to know the minor was an Indian child as to mother's side of the family. However, we cannot come to the same conclusion as to father's relatives.

The Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S., supra*, 46 Cal.App.5th at p. 1053.) However, the Agency is required to include in its reports a discussion of what efforts it undertook to locate and interview family members who might have pertinent information and, "[i]n the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as

9

a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484; accord, *In re K.R.* (2018) 20 Cal.App.5th 701, 709.) The record makes no such affirmative showing here.

Deficiencies in ICWA inquiry and notice are reviewed for harmless error. Those deficiencies "may be deemed harmless error when, even if proper notice had been given, the child would not have been found to be an Indian child." (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251.) However, error is not presumed. It is mother's obligation to present a record that affirmatively demonstrates error. (*In re D.W.* (2011) 193 Cal.App.4th 413, 417-418.) Mother has done so here. If we conclude the juvenile court did not comply with the ICWA provisions, we "reverse only if the error is prejudicial." (*In re A.L.* (2015) 243 Cal.App.4th 628, 639.) Given the state of the record, we cannot say with certainty that there was no prejudice to any relevant tribes.

The Agency either did not take sufficient affirmative steps to investigate the minor's possible Indian ancestry or did not document its efforts to do so, and the juvenile court failed to ensure that an adequate investigation had been conducted. In the absence of evidence of the Agency's efforts to fulfill its continuing duty of inquiry, we cannot say the failure of ICWA compliance was harmless. A failure to conduct a proper ICWA inquiry requires reversal of the orders terminating parental rights and a limited remand for proper inquiry and any required notice. (*In re A.B.* (2008) 164 Cal.App.4th 832, 839; *In re D.T.* (2003) 113 Cal.App.4th 1449, 1454-1456.) We must therefore remand for limited proceedings consistent with this opinion.

10

## DISPOSITION

The juvenile court's order terminating parental rights is conditionally affirmed and the matter is remanded to the juvenile court for limited proceedings to determine compliance under the ICWA, consistent with this opinion. If, at the conclusion of those proceedings, no tribe indicates the minor is an Indian child within the meaning of the ICWA, then the juvenile court shall make the appropriate ICWA finding and reinstate the order terminating parental rights. If the juvenile court finds, after proper inquiry and notice, that the ICWA applies, the juvenile court shall hold such further proceedings as are appropriate, including a new section 366.26 hearing.


                                          /s/
                                    EARL, J.



We concur:



      /s/
ROBIE, Acting P. J.



      /s/
MCADAM, J.*

_____

\* Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11